**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FIDEL URIBE OSORIO,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 22-9559
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Fidel Uribe Osorio is a native and citizen of Mexico who has lived in the United States without authorization since 1998. In 2017, the government charged him with removability as an alien present in the United States without being admitted or paroled. Uribe did not contest that charge, but requested cancellation of removal, *see* 8 U.S.C. § 1229b(b)(1).

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Of the various prerequisites for cancellation of removal, the only dispute was whether Uribe had "establishe[d] that removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence," § 1229b(b)(1)(D). At a hearing before an immigration judge (IJ) in 2019, Uribe argued his two U.S.-citizen children (who were then ages 11 and 12) would suffer such hardship. His evidence focused on:

- his status as the family's sole breadwinner (his wife—the children's mother—is a full-time homemaker, and she is also not lawfully present in the United States); and

- the effects he had observed in his children since his removal proceedings began, including rebellious behavior and difficulties at school.

The IJ concluded the hardship to Uribe's children would not be exceptional and extremely unusual because:

- Uribe's wife is healthy, has worked in the past, and is still capable of working, which is a reasonable expectation given that the children go to school and are almost teenagers;

- close-by family members could provide support, including Uribe's adult stepdaughter (his wife's daughter from a previous relationship) who lives in the same home; and

- the children are active and healthy, and they receive Medicaid.

Uribe appealed to the Board of Immigration Appeals (BIA), which affirmed through a single-member, summary order. Uribe then timely filed this petition for review.

2

Uribe's arguments before us originally turned on the premise that we could review the agency's hardship determination de novo. Our precedent, however, held that we lacked jurisdiction to review the hardship determination under any standard. We thus dismissed the petition for review. *Uribe Osorio v. Garland*, No. 22-9559, 2023 WL 3066678, at *1 (10th Cir. Apr. 25, 2023). Uribe then petitioned for certiorari from the Supreme Court.

While Uribe's certiorari petition was pending, the Supreme Court decided *Wilkinson v. Garland*, 601 U.S. 209 (2024). *Wilkinson* held, contrary to our earlier view, that the federal courts of appeal indeed have jurisdiction to review an agency's decision that an applicant for cancellation of removal has not met the exceptional and extremely unusual hardship standard. *See id.* at 212. However, the Court did not establish that the courts of appeal may look at the question de novo. Rather, because the "question is primarily factual, that review is deferential." *Id.* at 225.

Following *Wilkinson*, the Supreme Court granted certiorari to Uribe, vacated this court's decision dismissing his petition for review, and remanded for further consideration. *See Uribe Osorio v. Garland*, 144 S. Ct. 1337 (2024). We called for further briefing on the merits of Uribe's hardship claim under the deferential standard required by *Wilkinson*. We have received and considered those briefs, and the issue is now ripe for disposition.[1]

---

[1] In reaching this disposition, we have reviewed both the original briefs and the supplemental briefs. We repeat, however, that Uribe's original briefs presented his arguments under the assumption that this court could review the hardship determination de novo—a standard *Wilkinson* did not adopt. Uribe's supplemental

**1.** Uribe first argues that the agency committed a legal error in its analysis of the hardship determination, so deference is not appropriate.  He refers specifically to a comment the IJ made during the evidentiary hearing just before announcing his decision on the hardship issue:

> [Uribe's] case will not be over today.  He will have a lengthy period in which to appeal my decision to a higher Court, and I would note that [Uribe], although his children are only starting their teenage years, I believe his daughter . . . does appear eligible to [indiscernible] process and so by the time the appeal period is over and if he is not successful, his wait in Mexico to [indiscernible] process I don't believe will be an example of the type of hardship intended by Congress.  I will give my decision at this time.

R. at 135.  Without objection from the government, Uribe claims that where the transcript says "[indiscernible] process," the IJ actually said "consular process," referring to an immediate-relative visa petition that his oldest daughter could file when she reaches twenty-one years of age.  Uribe interprets this to mean that the IJ believed such a visa petition could allow him to return to the United States fairly quickly after his removal, accounting for the amount of time it would take for removal proceedings to play out fully.  Finally, Uribe claims this was legal error because the IJ failed to realize that, by statute, he will be ineligible to seek readmission to the United States for at least ten years after his removal.  *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II).  In short, Uribe argues the IJ based the lack-of-hardship

---

brief does not attempt to show that his original arguments (presented under the de novo assumption) are equally valid under post-*Wilkinson* deferential review. Rather, he focuses on what he believes to be errors of law.  Our analysis in this order and judgment therefore focuses on the arguments presented in the supplemental brief.

finding in part on a legally erroneous estimate about how long Uribe would be required to remain in Mexico before he could reunite with his children in the United States.

It is difficult to discern the importance of the IJ's comment about consular process. The comment seems completely out of context—there is nothing in the hearing transcript discussing the possibility of the daughter filing an immediate-relative visa petition at age twenty-one. Moreover, the passage quoted above ends with "I will give my decision at this time," and the decision that follows says nothing about this consideration. *See* R. at 70–74. Thus, it is not clear this truly factored into the IJ's decision.

We will nonetheless give Uribe the benefit of the doubt that the IJ mistakenly believed Uribe could return to the United States more quickly than the law allows. Such an assumption does not automatically entitle him to relief because the question is not what the IJ thought, but rather whether the BIA adopted the IJ's reasoning as part of its summary disposition. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) ("As long as the BIA decision contains a discernible substantive discussion, . . . our review extends no further, unless [the BIA] explicitly incorporates or references an expanded version of the same reasoning [given by the IJ].").

Here, the BIA "adopt[ed] and affirm[ed] the decision of the [IJ]." R. at 3. For two reasons, we conclude this does not mean the BIA adopted the IJ's assumption

about the possibility of the daughter filing an immediate-relative visa petition and thereby bringing Uribe back to the United States relatively quickly.

First, as noted, the IJ's actual *decision* does not mention this issue.

Second, the BIA explicitly referenced a passage from Uribe's appeal brief arguing that his children "would be separated from [him] for many years before his daughter could even file a visa petition on his behalf (Respondent's Br. at 14–17 [*i.e.*, R. at 27–30])." R. at 3. The BIA deemed this "unfortunate," but concluded that "family separation is often the result in removal proceedings." *Id.* The cited passage from Uribe's BIA appeal brief presents the same argument he has presented here, namely, he will be barred by statute from applying for readmission for at least ten years. *See* R. at 28–29. In other words, it is clear the BIA understood and accepted his ten-plus-years argument but nonetheless found no exceptional or extremely unusual hardship. Thus, the IJ's (presumably) mistaken view about the law did not carry forward to the BIA's decision.

**2.** Uribe next challenges the BIA's statement that "family separation is often the result in removal proceedings," R. at 3. He says the BIA has failed to support this assertion with statistics. He also points out that three of the BIA's published decisions about the hardship standard involved families that would go back to the home country together, not be separated. "One must assume," he says, "the [BIA] designated those three cases as precedential guides because they all presented the most common scenarios to be encountered by IJs." Pet'r Suppl. Br. at 11. Thus, in

6

his view, "the [BIA's] own precedents strongly suggest that family separation is the *exception*, not the rule." *Id.*

It appears Uribe views this as another legal error. To the extent it is a purely legal issue, we see no error. Uribe's notion that the facts underlying three precedential cases somehow establish factual presumptions about family separation for all cases going forward is pure conjecture. In any event, his claim that the BIA should have cited statistics reveals this issue's true character, namely, it is a fact question. Even after *Wilkinson*, courts of appeal lack jurisdiction to review the agency's factual determinations in this context. *See Wilkinson*, 601 U.S. at 222.

Assuming we could view this as a mixed question of law and fact, which we have jurisdiction to review, *see id.*, our review would still be deferential, *see id.* at 225. Neither the Supreme Court nor this court has established what post-*Wilkinson* deferential review really means (*e.g.*, clear error, substantial evidence, etc.) and we need not resolve that issue here because we would affirm under any conceivable formulation of a deferential standard. Indeed, the notion that removal often leads to family separation seems beyond reasonable dispute.

**3.** Finally, Uribe argues that the agency committed legal error because the IJ found that Uribe's wife will remain in the U.S. with her children and can work to support them, even though she is also unlawfully present in the United States. Uribe argues the agency could not consider the mother's *physical ability* to work if she did not have *legal permission* to work.

7

The BIA did not explicitly adopt the IJ's finding about Uribe's wife's ability to work. However, Uribe's BIA appeal brief noted that his wife had only previously worked "minimum-wage jobs at fast-food restaurants and cleaning homes," in contrast to Uribe's very profitable drywall business. R. at 15. The BIA's decision then said that "a lower standard of living is not sufficient, by itself, to meet the exceptional and extremely unusual hardship standard." R. at 3. We thus interpret the BIA's decision as incorporating the IJ's finding that Uribe's wife is capable of providing for her children economically, although not to the same extent as Uribe himself.

Even under this interpretation, we see no basis to grant relief. Again, Uribe frames this as a legal error, *i.e.*, the agency may not consider a person's ability to work if that work would not be lawful under the immigration laws. Uribe offers no authority to support this rule, and we are not otherwise persuaded that we must adopt it. As the Supreme Court emphasized, the hardship question is "primarily factual." *Wilkinson*, 601 U.S. at 225. We can locate nothing in the relevant statutes or case law that prevents the agency from considering all of the facts, including physical ability to work regardless of legal authorization.

For all these reasons, we deny the petition for review.

Entered for the Court

Bobby R. Baldock
Circuit Judge